**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DOCKET SEARCHER, LLC,**

**Plaintiff,**

**v.**

**BOYD GENTRY, et al.,**

**Defendants.**

**Case No. 2:25-cv-485**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Vascura**

**OPINION AND ORDER**

Docket Searcher, LLC is suing two companies (Midland Credit Management Inc. and LVNV Funding Inc.) and their lawyer (Boyd Gentry) over three subpoenas defendants issued to Docket Searcher in several state court actions. (Am. Compl., Doc. 19). This Court, through the then-assigned judge, previously dismissed all of Docket Searcher's claims against Midland and Gentry. (Doc. 37). Now, Docket Searcher wants either: (1) reconsideration of that order, (Doc. 40), or (2) entry of a final judgment as to Midland and Gentry so it can appeal that order (Doc. 40). For the reasons explained below, the Court **GRANTS** Docket Searcher's Motion for Entry of Final Judgment (Doc. 40) but **DENIES** its Motion for Reconsideration (Doc. 40). Beyond that, the Court on its own has reconsidered parts of that order to which Docket Searcher did not seek reconsideration. And it **REVISES** the order to the extent explained below.

**BACKGROUND**

The Court provided a detailed summary of the facts in its March 17, 2026, order (Doc. 37), so it provides a brief recounting of the basics here. Docket Searcher,

as its name suggests, "searches publicly available information," and "provides the search results in various forms" to its customers. (Doc. 19, #162). Midland, LVNV, and Gentry (the lawyer for Midland and LVNV in state court) issued subpoenas to Docket Searcher in three underlying debt actions in state court. (*Id.* at #168–69). According to Docket Searcher, the three defendants here did this even though Docket Searcher had no involvement in the debt-collection cases or even any connection to the defendants. (*Id.* at #170).

In one of those underlying cases, Midland argued that the subpoenas were proper because it believed that the defendant's proffered expert, Attorney Sam Han, who Gentry claims is Docket Searcher's organizing member, (Gentry Mot. Dismiss, Doc. 25, #270), had a financial interest in a counterclaim the defendant brought. (Doc. 19, #174). And Midland asserted that Docket Searcher was the only entity that would have the documents to prove that. (*Id.*).

According to Docket Searcher, the judge in that case disagreed with Midland and ordered it to depose Han himself rather than Docket Searcher. (*Id.* at #176). But instead of doing that, Midland (with Gentry as its attorney), subpoenaed documents from Han that in effect commanded production of Docket Searcher's "financial documents, electronic documents, trade secrets, and privileged documents." (*Id.*). Docket Searcher says this subsequent subpoena demonstrates that Midland and Gentry intended merely to abuse Docket Searcher (rather than undermine Han as an expert). (*Id.*). Docket Searcher further alleges that LVNV, again through Gentry,

issued an identical subpoena to Docket Searcher in an LVNV debt-collection action. (*Id.* at #176–77).

So Docket Searcher sued here (Doc. 19), asserting the same three claims against each of Midland, LVNV, and Gentry, one arising under federal law and the other two under Ohio law. The federal claims alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692c(b), 1692d, 1692e, 1692f. (Doc. 19, #178–85). The other two claims were Ohio common-law claims for negligence, (*id.* at #185–88), and punitive damages. Midland and Gentry both moved to dismiss the amended complaint as against them, (Doc. 21; Doc. 25), and the Court, through the then-assigned judge, granted those motions, (Doc. 37).

Specifically, the Court held that the subpoenas were not "communication[s] … in connection with the collection of a debt" because they did not have an "animating purpose" of inducing payment of a debt. (Doc. 37, #395–96). Accordingly, Docket Searcher's FDCPA claims against Midland and Gentry failed as a matter of law. (*Id.* at #396). So the Court dismissed the federal claim against both defendants with prejudice. (*Id.* at #397). Given the dismissal of those federal claims, the Court also held that it had discretion under 28 U.S.C. § 1367(c)(3) to dismiss Docket Searcher's remaining state-law claims against Midland and Gentry on jurisdictional grounds, which it did. (*Id.* at #397).

Importantly, part of Docket Searcher's FDCPA claim against Gentry was based on a subpoena that Gentry had issued on behalf of LVNV, the remaining defendant. (Doc. 19, #177). Docket Searcher is also suing LVNV based on that same subpoena,

(*Id.* at #179–85). So the Court's analysis that this subpoena did not qualify as a debt collection communication under the FDCPA applies equally to LVNV. (Doc. 37, #395–96). That is, unless the Court reverses itself, Docket Searcher's only remaining federal claim, the FDCPA claim against LVNV, likewise must fail.

But for reasons that are not entirely clear, LVNV apparently does not wish to make this argument. That presents an odd situation from a judicial efficiency perspective. To start, Docket Searcher and LVNV have been vigorously litigating discovery disputes (indeed, one might argue the reason for LVNV's unwillingness to raise an argument that the Court has already found meritorious is that it wishes to use this action to obtain discovery for another dispute it has with Docket Searcher that is pending elsewhere). (*See* Plf.'s Mot. for Leave to App., Doc. 53). And they have been fighting these discovery battles to prepare for trial on (1) a federal claim that is meritless if the Court's order is correct, and (2) state-law claims over which the Court likely would not take jurisdiction but for the presence of the (meritless) federal claim.

Against that backdrop, Docket Searcher recently filed a motion that may help move the case along. (Doc. 40). Specifically, Docket Searcher asks the Court to enter a final judgment under Federal Rule of Civil Procedure 54(b) with respect to Gentry and Midland, the two defendants that the Court previously dismissed. That would enable Docket Searcher to appeal the Court's dismissal of the FDCPA claims against those two defendants. (Doc. 40, #404). In the alternative, Docket Searcher asks the Court to reconsider that earlier dismissal. (*Id.* at #405). That matter is now ripe.

## ANALYSIS

### A. Motion for Reconsideration

The Court begins with Docket Searcher's motion for reconsideration of the Court's March 17, 2026, order. That order, again, did not address Docket Searcher's claims against LVNV, or, in other words, it "adjudicate[d] fewer than all the claims" and "fewer than all the parties," which makes it an interlocutory order. Fed. R. Civ. P. 54(b).

The Federal Rules of Civil Procedure do not "explicitly address motions for reconsideration of" such orders. But courts have the inherent power to consider such requests based on "common law" along with "additional support in" Rule 54. *Rodriguez v. Tenn. Lab. Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Perhaps not surprisingly, though, while courts are authorized to entertain such motions, they face a high hurdle and are rarely granted. Traditionally, "courts will find justification for reconsidering interlocutory orders [only when] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *id.*). In short, "[a] motion to reconsider an interlocutory order is not an invitation for the parties to relitigate the issue." *Breeders' Cup Ltd. v. Nuvei Techs., Inc.*, No. 5:19-cv-113, 2023 WL 6135671, at *2 (E.D. Ky. Sep. 19, 2023).

**1. The Court Did Not Clearly Err in Dismissing Docket Searcher's FDCPA Claims Against Gentry and Midland.**

Docket Searcher's argument for reconsideration is spartan to say the least. Apart from listing out five allegations from the complaint (i.e., not new evidence), it says only that the Court erred in finding that "the subpoenas were not communications in connection with the collection of a debt." (Doc. 40, #405). But Docket Searcher does not press that claim of "error" based on new law or new facts, and it makes no effort to claim manifest injustice. So Docket Searcher must be arguing that reconsideration is needed to correct clear error. To succeed on that front, it must show either a "legal error" or a "clearly erroneous finding of fact" in the Court's prior analysis of the FDCPA claim. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009). It has shown neither.

In its complaint, Docket Searcher had argued that defendants' subpoenas violated four provisions of the FDCPA. (Doc. 19, #179–85). The Court held that, for all four of those arguments, Docket Searcher needed to show that the defendants issued the subpoenas "in connection with the collection of a debt." (Doc. 37, #394). It did not err in imposing that requirement. The four provisions on which Docket Searcher relied prohibit: (1) communications with third parties (subject to certain exceptions), "in connection with the collection of any debt," 15 U.S.C. § 1692c(b), (2) harassing, oppressive, or abusive conduct "in connection with the collection of a debt," *id.* § 1692d, (3) using "false, deceptive or misleading representation[s] or means in connection with the collection of any debt," *id.* § 1692e, and (4) using "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. In short,

all four require that the conduct at issue relate to collecting a debt. Indeed, even now Docket Searcher does not challenge that holding.

The Court next considered whether the subpoenas here met that in-connection-with-the-collection-of-debt standard. (Doc. 37, #395–96). The Court began by correctly noting that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor," a formulation it copied verbatim from published Sixth Circuit precedent. (*Id.* (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011))). And again, it does not appear the Docket Searcher argues otherwise.

The question then, at the motion-to-dismiss stage, was whether it was plausible, "based on the facts alleged in the complaint, that one of the purposes animating" the defendants' decision to issue a given subpoena "was to induce payment by" the debtor-defendant. *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir. 2014). To answer that question, the Court turned to the seven-factor balancing test applied by the Sixth Circuit (albeit in an unpublished opinion). That test calls on courts to consider:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015) (citing *Grden*, 643 F.3d at 173).

The Court reasoned that, although the subpoenas were issued in debt-collection actions, the subpoenas themselves were not animated by a purpose of debt collection under that rubric for several reasons. First, Docket Searcher "is not a debtor and has no relationship with Midland Credit or Mr. Gentry." (Doc. 37, #395). That is, the subpoena was not seeking to induce Docket Searcher (the subpoena recipient) to pay anything. Beyond that, the Court also responded to Docket Searcher's argument that, because the subpoenas were designed to increase Midland Credit's and LVNV's odds of success in the debt-collection litigation in connection with which they were issued, the subpoenas "made the attempt to collect debt more likely to succeed." (*Id.* at #396 (quoting Doc. 26, #318)). The Court first noted that the connection between collecting the debt and enforcing the subpoenas was quite attenuated to begin with. (*Id.*). Then it pointed out that the subpoenas were merely connected to the state court defendants' counterclaims against Midland and LVNV. (*Id.*). Finally, the Court distinguished authority Docket Searcher relied on to show that subpoenas could violate the FDCPA: those cases involved (1) notices to bankruptcy petitioners offering discharge for reduced payment, and (2) letters seeking to enforce judgments where an adjudicator had found the debtor liable. (*Id.*).

In seeking reconsideration, Docket Searcher now argues that 15 U.S.C. § 1692f "is not limited to 'communications' but also governs 'unfair or unconscionable means.'" (Doc. 54, #516). So what? The Court didn't dismiss these claims because it thought that the subpoenas were not "communications." It did so because it concluded that Docket Searcher had not plausibly alleged that they were animated by a purpose

of debt collection. And, again, § 1692f proscribes "unfair or unconscionable means *to collect or attempt to collect any debt*." (Emphasis added). The "collect any debt" part of that would seem to require the same "animating purpose" showing described above. If anything, the Court's concern that the subpoenas were only remotely related to the underlying debt applies with greater force here. Presumably, for conduct to count as an attempt to actually collect a debt, it must be more than merely "connected" to that debt.

The bottom line is that the Court will not revise its ruling on this front. As things stand, the law required Docket Searcher to plausibly allege that the subpoenas were animated by a purpose to induce payment by the debtor—and not merely that they could, through a series of intervening events, somehow marginally increase the chance that some debtor would eventually pay some debt. So the Court did not clearly err in dismissing the FDCPA claims.

**2. The Court Clearly Erred in Dismissing Docket Searcher's State-Law Claims Against Gentry and Midland.**

In reviewing its previous order, though, the Court does have one concern. While Docket Searcher does not request reconsideration of the Court's dismissal of their state-law claims against Gentry and Midland, (Doc. 40, #405), the Court opts to take a second look at that part of the opinion. The Court has the power to do so for the same reasons it could consider Docket Searcher's motion. *See Rodriguez*, 89 F. App'x at 959 ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final

judgment.”). And the same standards govern whether it should modify its prior interlocutory order. *Id.* So the Court reviews its previous decision for clear error.

The Court dismissed Docket Searcher’s state-law claims against those two defendants because (1) it had dismissed Docket Searcher’s federal claims against them, and (2) “a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction.” (Doc. 37, #397). The basic legal point is true—indeed, it comes straight from 28 U.S.C. § 1367(c). That is, when a case is in federal court pursuant to federal question jurisdiction, and the court dismisses all of the federal claims, it can elect to dismiss any remaining state-law claims without prejudice for lack of jurisdiction. But the factual predicate for that legal rule was not present—the Court had not dismissed “all claims” over which it had original jurisdiction. From the outset of the case, the Court also had federal-question jurisdiction based on Docket Searcher’s FDCPA claim *against LVNV*, and the Court has not dismissed that claim.

Against that backdrop, the Court finds that it erred in dismissing the state-law claims against Midland and Gentry. To see why, start with the statute. Section 1367(a) gives the Court, “in any civil action,” the power to hear “all other claims that are so related to claims *in the action* within such original jurisdiction that they form part of the same case or controversy under Article III.” (Emphasis added). Subsection (b) then provides a caveat to that rule: when original jurisdiction is based on the parties’ diversity of citizenship, the Court cannot take jurisdiction of claims involving parties joined to the action in several specified ways. But there is no such caveat when

the Court has original jurisdiction because the case arises under federal law, which is the basis for jurisdiction here. Putting (a) and (b) together, if the Court has federal question jurisdiction over any claim in an action, then it has supplemental jurisdiction of any other sufficiently related claim, brought by or against any other party, however that party or claim is joined. That is, "if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Campanella v. Com. Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).

True, subsection (c), provides the Court with discretion to avoid reaching a non-federal claim if, among other things, it "has dismissed *all claims* over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). But "all claims" means, not surprisingly, all claims. *See Wright & Miller's Federal Practice & Procedure* § 3567.3 & n.85 (4th ed. 2008) (collecting cases). So if supplemental jurisdiction was proper as to all the claims (federal and state) in this action in the first instance, then the Court's "discretion to relinquish jurisdiction under § 1367(c)(3) was never triggered" by its earlier order dismissing only *some* of the federal claims. *Hansen v. Bd. of Trustees of Hamilton S.E. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008); *see also Gudenkauf v. Stauffer Comms., Inc.*, 896 F. Supp. 1082, 1084 (D. Kan. 1995) (holding that supplemental jurisdiction remains "[a]s long as one of the parties to the suit has federal claims pending against it"). That in turn means that the earlier Order's underlying rationale—that dismissal of all federal claims against one party leads to dismissal of any state-law claims against that party—was incorrect.

That still leaves two questions: (1) whether Docket Searcher's state-law claims against Midland and Gentry are sufficiently related to its FDCPA claim against LVNV that § 1367(a) applies, and (2) whether any of the other grounds for declining jurisdiction in § 1367(c) apply.

As for the former, the statutory standard asks whether the claims form part of the same Article III case or controversy. The Supreme Court instructs that that depends on whether the claims "'derive from' the same 'nucleus of operative fact.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). That means the claims must "revolve around a central fact pattern." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (quoting *White v. Cnty. of Newbury, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993)).

The relationship between Docket Searcher's claims against the two defendants and its claims against LVNV meet that test. Start with its state-law claims against Gentry for his hand in LVNV's subpoena. Those claims and the claims against LVNV arise out of a single, indivisible set of facts: they all attack Gentry and LVNV for exactly the same subpoena—the one Gentry issued on LVNV's behalf. (Doc. 19, #177). So they necessarily arise out of a common nucleus of operative fact.

Next consider Docket Searcher's claims against Gentry and Midland based on the Midland subpoenas. Admittedly, these present a closer question because Docket Searcher is alleging separate, if identical, conduct. (*Id.* at #176). But still, the Court concludes these claims are sufficiently related to meet the requirements of § 1367(a).

That is because all of Docket Searcher's claims will "involve factual overlap and many of the same witnesses." *Blakely*, 276 F.3d at 862. Gentry was the attorney for both Midland and LVNV, so evidence he produces in discovery could easily bear on the subpoenas' allegedly harassing or abusive character. Conversely, Han—the expert witness in favor of the state-court debtors' counterclaims—will presumably have evidence bearing on whether Docket Searcher is correct that all three subpoenas were frivolous.[1]

So the Court has the power to hear the case, including the two remaining state-law claims against each of the two defendants as to whom the Court has dismissed the FDCPA claim. That leaves the question of whether it should decline to do so under § 1367(c). It should not. As explained above, § 1367(c)(3) provides no basis for declining jurisdiction here—the Court has not dismissed all of the federal claims. And these negligence and punitive damages claims do not involve "novel or complex issue[s] of State law." 28 U.S.C. § 1367(c)(1). Likewise, they do not appear to "substantially predominate[]" over Docket Searcher's FDCPA claims. *Id.* § 1367(c)(2). And, to (c)(4)'s catchall provision, nothing about this case seems to call for restraint. So the Court will revise its earlier order dismissing these two defendants from the action for lack of jurisdiction.

[1] Again, the only filing asserting that Han has an interest in Docket Searcher is Gentry's motion to dismiss. (Doc. 25, #270). For purposes of this analysis at least, the Court notes that it seems probable that Han is the so-called "minority shareholder" that the complaint references. (Doc. 19, #2).

## B. Motion for Entry of Final Judgment

That leaves one matter for resolution—Docket Searcher's motion for entry of final judgment as to Midland and Gentry. Rule 54(b) permits "entry of a final judgment as to one or more, but fewer than all, claims or parties," but only if "the court expressly determines that there is no just reason for delay." And absent that determination, any order that does not complete the adjudication of all claims "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a" true final judgment. Fed. R. Civ. P. 54(b). Heeding these limits "preserves the historic federal policy against piecemeal appeals." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

While that all sounds very imposing, the Supreme Court has explained that Rule 54(b) does not require an extraordinary showing. Rather, district courts have discretion to determine when a dispositive adjudication of a claim in a "multiple claims action is ready for appeal." *Id.* That discretion, the Court said, should be "exercised 'in the interest of sound judicial administration'" considering "judicial administrative interests as well as the equities involved." *Id.* (quoting *Sears*, 351 U.S. at 37). Courts in the Sixth Circuit consider a "nonexhaustive list" of five factors to decide whether it would be appropriate to enter a partial final judgment under Rule 54(b). *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003) (quoting *Corrosioneering v. Thyssen Env'tl. Sys.*, 807 F.2d 1279, 1283 (6th Cir. 1986)). Those are:

> (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility

> that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* (quoting *Corrosioneering*, 807 F.2d at 1283). Depending on the facts of a given case, one or more factors may not necessarily be relevant. *Corrosioneering*, 807 F.2d at 1283. But the Court must at least consider them. *Akers*, 338 F.3d at 495–96.

So start with the first factor, which focuses on "whether the [adjudicated and surviving] claims are related." *In re Cardinal Health Inc. Sec. Litig.*, No. C2-04-575, 2007 WL 1026347, at *4 (S.D. Ohio Mar. 29, 2007). For a court to consider early entry of a judgment, the claims that are covered by that judgment "should generally be separate and independent" from any remaining claims. *Christovero, LLC v. Sanguis Diagnostics Corp.*, No. 5:25-cv-364, 2026 WL 3205843, at *9 (E.D. Ky. Oct. 26, 2026) (quoting *Johnson v. Synovus Bank*, No. 2:14-cv-2950, 2015 WL 4988579, at *1 (W.D. Tenn. Aug. 19, 2015)). Here, though, as the Court just noted in discussing supplemental jurisdiction, the two dismissed claims (i.e., the FDCPA claims against Midland Credit and Gentry) are essentially identical to the remaining FDCPA claim against LVNV. Likewise, while the negligence and punitive damages claims are not the same, they all turn essentially on whether the subpoenas were frivolous or issued in bad faith. (*See* Doc. 19, #187, 189). So all the claims have significant evidentiary overlap and similar legal requirements. That ostensibly cuts against certification.

That said, there's reason to think that the first factor isn't that important to the analysis here. The reason courts should consider whether the adjudicated and

unadjudicated claims are separate is to ensure that the appeals court's determination on the claims that go up will finally resolve the matter. If the claims are intertwined, it is possible that, whatever the court decides as to the adjudicated claims may not end up resolving anything, as the intertwined claims will still go forward. But that is not the case here. If the appeals court were to affirm the Court's decision, that would be the end of the FDCPA claim against LVNV, as well. And, with all federal claims against all defendants gone, it would be appropriate for the Court to dismiss the remaining state law claims under 28 U.S.C. § 1367. So the concern on which the first factor rests does not apply here.

The second factor favors certification. Nothing the Court will do in its remaining handling of this case, especially now that it has denied reconsideration, would moot the need for review of the order dismissing the FDCPA claims.

The third factor likewise favors certification. The issue that would go up on appeal if the Court certified its earlier order under Rule 54(b) (i.e., whether a subpoena issued to a non-debtor is a communication in connection with the collection of a debt) is a pure question of law. Resolving it will not require the appeals court to parse the record or even consider whether the subpoenas here were issued for legitimate reasons. And, however the Sixth Circuit answers that legal question, it will apply equally to all of the FDCPA claims. So if the Sixth Circuit were to affirm, and Docket Searcher were to try to raise that same issue on appeal of the remaining FDCPA claim against LVNV at the end of this case, that appeal would be frivolous. Conversely, if the Sixth Circuit were to reverse, then the FDCPA claims against all

three defendants would proceed to judgment on the remaining arguments and issues. Either way, the Sixth Circuit would not see this same issue in a subsequent appeal in this case, or if it did, the appeal would almost certainly be sanctionable. So the third factor does not count against certification.

The fourth factor does not apply. The Court is not aware of any potential set-offs on the facts here.

So that leaves the fifth factor. Collectively, the various component parts of this factor seek to explore how the judicial system can most efficiently resolve the case. Here, efficiency concerns, or what the Supreme Court has characterized as "sound judicial administration," *Curtiss-Wright*, 446 U.S. at 10, strongly favor certification. The Court's earlier order concluded that the federal claims against two of the three defendants fail as a matter of law, and it did so on grounds that apply equally to the claim against the third defendant. If the Court was correct in that determination, then the federal claims against all three defendants are meritless and this case's tenure in federal court will come to a close. Conversely, if the Court was wrong, then it only makes sense to proceed on the nearly identical FDCPA claims against all three defendants at the same time. The only way for that to occur, though, given LVNV's refusal to press the issue, is for the Court to enter judgment under Rule 54(b) as to the FDCPA claims against Midland and Gentry.

In short, certification will prevent wasteful and duplicative litigation in this Court without threatening the same in the court of appeals. For that reason, there is no just reason for delay.

## CONCLUSION

For those reasons, the Court **DENIES** Docket Searcher's Motion for Reconsideration (Doc. 40), which is addressed only to the Court's dismissal (Doc. 37) of Docket Searcher's FDCPA claims against Midland and Gentry. Separately, acting on its own accord, the Court **REVISES** its March 29, 2026, order (Doc. 37), and **RESTORES** to the action Docket Searcher's state-law claims against Midland and Gentry. Beyond that, the Court **GRANTS** Docket Searcher's Motion for Entry of Final Judgment (Doc. 40) on its FDCPA claims against Midland and Gentry and **FINDS** that there is no just reason for delay. Fed. R. Civ. P. 54(b). Accordingly, the Clerk is **DIRECTED** to **ENTER JUDGMENT** against Docket Searcher on its FDCPA claims against Midland and Gentry. If Docket Searcher appeals that judgment, then they or any other party may request the Court to stay this litigation pending the court of appeals' decision.

**SO ORDERED.**

November 16, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**